BRITISH–AMERICAN TOBACCO CO., Limited, v. BRITISH–AMERICAN
CIGAR STORES CO.

(Circuit Court of Appeals, Second Circuit.    February 10, 1914.)

No. 131.

TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNLAWFUL COMPETITION—CORPO-
RATE NAME.

Complainant for 11 years had been extensively engaged in the whole-
sale tobacco business throughout the world, and had established an en-
viable reputation, dealing under the name "British-American." Though
authorized to sell at retail, it had not done so, in order to conserve its
wholesale trade.    Defendant, a New Jersey corporation without any con-
nection with complainant, organized itself to establish a chain of cigar
stores under the name "British-American Cigar Stores Company."    De-
fendant had no business in England nor anywhere else to warrant the
use of the name "British," and during the years succeeding defendant's
organization its use of the name "British-American" had caused con-
fusion, and was calculated to lead the public to believe that there was
some connection, financial or otherwise, between the companies, and in-
duced the public to buy defendant's goods and its stocks and bonds, be-
lieving that they were issued by a corporation organized or connected
with complainant.    *Held*, that defendant's adoption of the words "Brit-
ish-American," which had become irrevocably associated with the tobacco
business, was unlawful and would be enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 81; Dec. Dig. § 70.*

Imitation or simulation of trade-mark or trade-name as unfair com-
petition, see note to John H. Rice & Co. v. Redlich Mfg. Co., 122 C. C. A.
447.]

Appeal from the District Court of the United States for the South-
ern District of New York.

Suit by the British-American Tobacco Company, Limited, against
the British-American Cigar Stores Company, to restrain defendant's
use of the word "British" in its corporate name.    From a decree dis-
missing the bill (206 Fed. 189), under equity rule 29 (198 Fed. xxvi),
complainant appeals.    Reversed.

Nicoll, Anable, Lindsay & Fuller, of New York City (De Lancey
Nicoll and Thomas S. Fuller, both of New York City, of counsel), for
appellant.

Kearny & Dickinson, of New York City (Carroll G. Walter, of New
York City, of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge.    The question presented by this appeal is
whether or not the complaint states a cause of action.

The complainant is a British corporation engaged in growing and
manufacturing tobacco and dealing in tobacco, cigars, cigarettes and
snuff in England, America and elsewhere.    It is authorized by its char-
ter to buy, sell, grow, import and export tobacco, in all its forms, at
wholesale and retail.    It may organize or promote any company to deal
in its products.    Its business has existed since 1902 and has spread to

all parts of the world. Its principal office is in London and its chief
subsidiary office, since 1903, has been in New York. Although it has
the right to sell at retail it has refrained from doing so because of a
widespread prejudice among retailers against wholesalers who enter
the retail trade and thus compete with their own customers. For these
reasons the complainant, although it has a right to do so, has not es-
tablished a so-called chain of cigar stores or retail tobacco stores, as its
doing so would greatly offend its customers and induce them to with-
draw their trade.

The complaint further alleges that the defendant is a corporation re-
cently organized in New Jersey, having no connection with Great Brit-
ain, and no inherent right to use the words "British-American" in
choosing its name "British-American Cigar Stores Company." It is
alleged that the defendant has established a chain of cigar stores which
it purposes to extend in the future and that its conduct has already
caused great confusion and uncertainty in the tobacco trade and has
been widely discussed in the trade journals inducing many interested
persons to believe that the complainant is to engage clandestinely in
the retail tobacco trade and is in competition with its own customers
and intends to establish a retail business throughout this country. It is
asserted, further, that the widespread belief thus engendered by the de-
fendant's use of the complainant's name has been, and will continue
to be, a great injury to the complainant and will impair its credit and
good name and will enable the defendant to secure trade and credit un-
der the belief that its stores are operated by, or are under the patron-
age of, the complainant.

In short, without further entering into details, the contention of the
complainant is as follows:

First: That it has for eleven years been engaged in the tobacco busi-
ness throughout the world and has established an enviable reputation
for financial responsibility and honorable dealing under the name *Brit-
ish-American.*

Second: That the defendant arbitrarily and without right has ap-
propriated complainant's name, which is exclusively associated in the
tobacco business with the products of the complainant.

Third: That the defendant is a New Jersey corporation with no
business in England or anywhere else to warrant the use of the name
*British.*

Fourth: That during the year the defendant has been operating,
the use of the name British-American has caused great confusion and
will continue to cause confusion in the future.

Fifth: That the purchasing public having knowledge of complain-
ant's goods and desiring to procure them will, misled by the name,
take the defendant's goods instead.

Sixth: If the defendant's goods are inferior in quality, the com-
plainant's reputation will be seriously impaired, as the public will
draw the inference that complainant's output is deteriorating in qual-
ity.

Seventh: That should the complainant at any time in the future
desire to establish a chain of cigar stores it may find the field entirely
occupied by the defendant.

We cannot resist the conclusion that the complaint states a case of unfair competition. Unfair to the complainant because the use of its name may induce the thoughtless purchaser, anxious to secure its product, to take the defendant's instead, and unfair to the public because they may be induced to purchase not only the defendant's goods, but also its bonds and stocks, believing that they are issued by a corporation organized by or connected with the complainant.

There can be no pretense that the defendant is in any way connected with the complainant or any other British company, or that the word *British* is descriptive of its product, its methods or its incorporators. We are unable to discover any valid, or even a plausible, reason for its adoption unless it was to accomplish the objects alleged in the complaint. If the object of the defendant were to sell its goods and securities upon their merits, what possible motive could it have had in choosing a name which had been pre-empted in the tobacco trade for ten years? We can think of none. If, on the other hand, the object were to induce the unthinking public to believe that the defendant was connected with the great British-American Company, with its boundless resources and a decade of successful business behind it, the defendant's conduct was perfectly natural.

To change the defendant's name can injure no one, to retain it may mislead the public, confuse the trade and seriously injure the complainant's business. When such an alternative presents itself, the duty of a court of equity is plain, viz., to stop the unfair proceeding in limine. We think that the use of a name which is not descriptive of the defendant, which is not true in fact and which the defendant has no inherent right to appropriate may mislead the public in the sale of its products and securities and injure the business and credit of the complainant. If the defendant intends to deal fairly, it can do no harm to change its name; if it intends to use the name unfairly, it should be compelled to change it.

The words "British-American" may be geographical or political, but in this controversy they have acquired a secondary meaning; they have been irrevocably associated with a large tobacco corporation for a decade, and any other tobacco company with the same name is sure to be associated in the public mind with the elder company and is sure to reap such benefits as accrue from such association.

If there were any valid reason for adopting the name, or if the business were other than tobacco, there might be some reason for the defendant's action, but no honest reason can be suggested for appropriating the name of the old and long established company. In the absence of any plausible explanation we have a right to assume that the reason was to secure the advantages which would result from a supposed connection with the well known company.

The case of Borden's Ice Cream Co. v. Borden's Condensed Milk Co., 201 Fed. 510, 121 C. C. A. 200, can be readily distinguished on the facts, but assuming that it applies, we think the preponderance of authority sustains the conclusion we have reached. Elgin Nat. Watch Co. v. Loveland (C. C.) 132 Fed. 41; Cole v. American Cement Co., 130 Fed. 703, 65 C. C. A. 105; Met. Telegraph & Telephone Co.

v. Met. Telephone & Telegraph Co., 156 App. Div. 577, 141 N. Y. Supp. 598; Florence Mfg. Co. v. Dowd, 178 Fed. 73, 101 C. C. A. 565.

The decree is reversed with costs.