### AUNT JEMIMA MILLS CO. v. RIGNEY & CO.

(District Court, E. D. New York. July 26, 1916.)

1. TRADE-MARKS AND TRADE-NAMES ⬤═61—INFRINGEMENT OF TRADE-MARK— WHAT CONSTITUTES.

A trade-mark may be appropriated solely by affixing it to an article of merchandise as a mark, and as such alone will it be protected, therefore, complainant cannot complain that defendant, which sold syrup, appropriated its flour trade-mark; the two articles being wholly distinctive.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 76; Dec. Dig. ⬤═61.]

2. TRADE-MARKS AND TRADE-NAMES ⬤═78—UNFAIR COMPETITION—WHAT CONSTITUTES.

While the avowed purpose of the law of unfair competition is to protect the honest and punish the dishonest trader, as well as to protect the public from deception, the mere fact that a defendant is guilty of fraudulent conduct deceiving the public, will not, where complainant is not injured, warrant relief.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 88; Dec. Dig. ⬤═78.]

3. TRADE-MARKS AND TRADE-NAMES ⬤═68—UNFAIR COMPETITION—RELIEF.

As a private injury is necessary to relief under the law of unfair competition, complainant, which manufactured flour, can be granted no relief because defendant labeled its syrup with complainant's trade-mark, the two articles not being in competitive classes; this being so though the public was led to believe that complainant manufactured the syrup.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. ⬤═68.]

4. TRADE-MARKS AND TRADE-NAMES ⬤═73(2)—USE OF NAME.

Some years after complainant knew that defendant had begun to sell syrup under the name by which complainant designated its flour, complainant's adoption of such name as part of its corporate title gives it no added rights.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ⬤═73(2).]

5. TRADE-MARKS AND TRADE-NAMES ⬤═78—UNFAIR COMPETITION—RELIEF.

Though complainant by extensive advertising created a market for its flour known as "Aunt Jemima's" it cannot complain that defendant, which sold syrup under the same name, reaped the benefit from such advertising; no injury being apparent.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 88; Dec. Dig. ⬤═78.]

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6.** TRADE-MARKS AND TRADE-NAMES ⬳68—RELIEF—PROSPECTIVE INJURY.

Equitable relief cannot be granted on the suggestion of a possible injury, so where defendant sold syrup under the same name that complainant sold flour, complainant will not, though it had a trade-mark in such name, be granted relief on the theory that defendant, by disposing of inferior syrup, might possibly prejudice the trade against complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. ⬳68.]

In Equity. Bill by the Aunt Jemima Mills Company against Rigney & Co. Bill dismissed.

Hugo Mock, of New York City, for complainant.

Owen, Owen & Crampton, of Toledo, Ohio (F. F. Crampton, of Toledo, Ohio, of counsel), for defendant.

VEEDER, District Judge. This is a suit for infringement of a registered trade-mark and for unfair competition. It appears that the Davis Milling Company, a Missouri corporation engaged at St. Joseph in the manufacture and sale of various kinds of flour, adopted about 1890 the name "Aunt Jemima's," together with a fanciful picture of a colored woman, as a mark for its pancake flour. On April 3, 1906, a certificate of registration was granted to it by the Patent Office for this mark as a "trade-mark for self-rising flour." In 1914 the Davis Milling Company was reorganized as the Aunt Jemima Mills Company, to which the foregoing trade-mark was duly assigned. Meanwhile, Rigney & Co., a New York corporation engaged in the manufacture of syrups, rock candy, etc., in the Borough of Brooklyn, adopted in February, 1908, a similar mark for a pancake syrup made by it. On December 29, 1908, a certificate of registration was granted to it by the Patent Office for this mark as a "trade-mark for pancake syrup and sugar cream." Upon its adoption of this mark for its pancake syrup the defendant notified the Davis Milling Company, and suggested a scheme of co-operation. This suggestion was eventually rejected, but the complainant did nothing to challenge the defendant's right to its use of the mark until this suit was instituted, November 15, 1915.

[1] There is no trade-mark infringement here. To sustain a charge of infringement, the owner must have used it on goods of the same descriptive properties as the goods sold by the alleged infringer. The complainant's predecessor in title applied for and was granted this mark for use on flour. Two years later the defendant applied for and was granted a similar mark for use on syrup. The question under the statute is whether these articles have the same descriptive properties. A mark may be said to be appropriated to merchandise of the same descriptive qualities when the essential characteristics of the goods are the same. Phœnix Paint & Varnish Co. v. John T. Lewis & Bros., 32 App. D. C. 285. Unless this be true, the mere similarity of the marks becomes immaterial. The law places no inhibition upon the use of the same mark by different persons, so long as the goods to which it is applied are so distinctive in their essential characteristics as to preclude the probability of confusion in trade. G. J. Tire Co. v.

G. J. G. Motor Car Co., 39 App. D. C. 508. Flour and syrup are so distinctive. The complainant is limited to its registration for flour. It could not extend its registration to syrup; for, never having made syrup, it had not in fact used the mark on syrup. Valid registration of a trade-mark is acquired, not by the invention or adoption of a word or symbol, but solely by affixing it to an article of merchandise as a mark; it is the trade, not the mark, that is protected. In other words, a registrant is entitled to prima facie ownership only of the field which he has actually appropriated. Hump Hairpin Co. v. De Long Hook & Eye Co., 39 App. D. C. 484.

[2, 3] The same considerations are practically decisive of the issue of unfair competition. The objects of the law of unfair competition as stated by the Circuit Court of Appeals of this circuit in Florence Mfg. Co. v. J. C. Dowd & Co., 178 Fed. 73, 101 C. C. A. 565, are:

"First, to protect the honest trader in the business which fairly belongs to him; second, to punish the dishonest trader who is taking his competitor's business away by unfair means; and, third, to protect the public from deception."

The fundamental basis of the private remedy is, however, not the protection of the public from imposition, but injury to the complainant. That the public is deceived may be evidence of the fact that the original proprietor's rights are being invaded. If, however, the rights of the original proprietor are in no wise interfered with, the deception of the public is no concern of a court of chancery. So, although fraudulent conduct which is calculated to deceive the public is a necessary element, it is the private loss of the complainant that is to be prevented, not the public injury arising to others. This is in conformity with general principles. A court of equity cannot enforce as such the police power of the state. It is not sufficient, therefore, that the use of a mark by a subsequent appropriator is calculated to deceive the public into believing that his goods are the goods of, that is, made by, the original proprietor of the mark. These principles were fully formulated by Lord Chancellor Westbury so long ago as the case of Leather Cloth Co. v. American Leather Cloth Co., 11 H. L. Cas. 523. See the statement by Circuit Judge (now Mr. Justice) Day in the leading case of American Washboard Co. v. Saginaw Mfg. Co. (C. C.) 103 Fed. 281, and by Judge Swayze in the recent case of Munn & Co. v. Americana Co., 83 N. J. Eq. 309, 91 Atl. 87. Also Borden's Condensed Milk Co. v. Borden Ice Cream Co. (C. C.) 201 Fed. 510, Borthwick v. The Evening Post, 37 Ch. D. 449, and Weener v. Brayton, 152 Mass. 101, 25 N. E. 46, 8 L. R. A. 640.

The nature of the private injury essential to the maintenance of the action is expressed in the title of the offense in terms of competition. Hence it is sometimes stated that where there is no competition there can be no action. Simplex Automobile Co. v. Kahnweiler, 162 App. Div. 480, 147 N. Y. Supp. 617. Doubtless this is usually a sufficient statement. If two articles differ in their descriptive qualities so that one is not likely to be taken by consumers for the other, then there is no direct competition in trade and ordinarily no injury. But I prefer to define the action in broad terms as resting upon injury aris-

ing from the act of the subsequent appropriator of a mark. For there may be injury other than that arising from direct competition in the sale of the product to which a mark is attached; as, for instance, in the case of British-American Tobacco Co. v. British-American Cigar Stores Co., 211 Fed. 933, 128 C. C. A. 431, Ann. Cas. 1915B, 363, where the court relied in part upon the probable confusion in the market in the stocks and securities of two corporations.

So, also, with respect to "unfairness." The mere fact of damage or probability of damage is not conclusive, since damage may result from lawful acts, such as legitimate competition. Fraudulent conduct on the part of the defendant is a necessary element, but fraudulent conduct without injury to the complainant does not suffice. Munn v. Americana Co., supra; Borthwick v. The Evening Post, supra. That is to say, it is a question of fact, not merely of intention. Unless the defendant has adopted means calculated to injure the complainant through unfair competition, the intention is immaterial. G. W. Cole Co. v. American Cement & Oil Co., 130 Fed. 703, 65 C. C. A. 105.

Applying these principles to the facts of this case, it is apparent that there can be no direct competition in trade between flour and syrup, for their descriptive qualities are dissimilar. Although the question whether articles belong to competitive classes is a question of fact rather than of law, the reports are replete with illustrations of the principle. In the following cases the articles mentioned were held to be of different descriptive qualities or classes: George v. Smith (C. C.) 52 Fed. 830 (canned salmon and canned tomatoes and peaches); Borden's Condensed Milk Co. v. Borden Ice Cream Co. (C. C.) 201 Fed. 510 (ice cream and milk); Lawrence v. P. E. Sharpless Co. (D. C.) 203 Fed. 762 (butter and cheese); Atlas Mfg. Co. v. Street & Smith, 204 Fed. 398, 122 C. C. A. 568, 47 L. R. A. (N. S.) 1002 (the title of a periodical devoted to fiction and the name of a personage shown on a moving picture film); Simplex Automobile Co. v. Kahn-weiler, 162 App. Div. 480, 147 N. Y. Supp. 617 (automobiles and fire extinguishers); Anglo-Swiss Condensed Milk Co. v. Metcalf, 31 Ch. D. 454 (condensed milk and butterine and eggs); Borthwick v. The Evening Post, 37 Ch. D. 449 (Morning Post and Evening Post, as titles for newspapers). To the same effect are the following decisions of the Court of Appeals of the District of Columbia on issues of interference in trade-mark registration: Peter Schoenhofen Brewing Co. v. John Sexton & Co., 41 App. D. C. 510 (grape juice and lager beer); G. J. Tire Co. v. G. J. G. Motor Car Co., 39 App. D. C. 508 (automobiles and rubber tires); Hump Hairpin Co. v. De Long Hook & Eye Co., 39 App. D. C. 484 (hairpins and hooks and eyes); Johnson Educator Food Co. v. Sylvanus Smith & Co., Inc., 37 App. D. C. 107 (crackers, biscuits, bread, and breakfast cereals, and salt, smoked, pickled, and canned fish); Muralo Co. v. National Lead Co., 36 App. D. C. 541 (kalsomine and white lead). On the other hand, in the following cases in this circuit the use of similar marks has been enjoined: Florence Mfg. Co. v. J. C. Dowd & Co., 178 Fed. 73, 101 C. C. A. 565 (toilet brushes and tooth brushes); British-American Tobacco Co., Ltd., v. British-American Cigar Stores Co., 211 Fed. 933,

128 C. C. A. 431, Ann. Cas. 1915B, 363 (wholesale and retail dealers in tobacco); American Tobacco Co. v. Polacsek (C. C.) 170 Fed. 117 (smoking and chewing tobacco and cigarettes); Van Zile v. Noruh Mfg. Co. (D. C.) 228 Fed. 829 (a laundry washing aid and a germicide and cleansing powder for use in sweeping).

[4] The essential characteristics of flour and syrup are dissimilar. It is true that both are designed for human consumption as articles of food. But in other respects they differ as a hat or a glove differs from a shoe, though both are articles of wearing apparel. No one 'desiring to purchase flour would accept syrup without knowing the difference. That is the test. Muralo Co. v. National Lead Co., 36 App. D. C. 541; Johnson Educator Food Co. v. Sylvanus Smith & Co., Inc., 37 App. D. C. 107, and cases above cited. If a consumer familiar with the mark used on the complainant's flour should conclude upon seeing the same mark on the defendant's syrup that the complainant had extended its business to sugar, it would be because of no confusion in his mind between the two articles. To regard the trade-mark right as including both would be to give it the effect of a trade-name upon all goods made by a particular company, instead of the effect of a trade-mark used upon particular goods. The complainant is here relying upon a trade-mark, not a trade-name. Of course, it can derive no adventitious advantage from its adoption of part of its mark as its corporate name six years after the known adoption and continuous use by the defendant of the mark upon its own product.

[5] Indeed, I do not understand that the complainant argues seriously that there is any competition between flour and syrup. It does, however, assert a right to relief on two other grounds: First, that the defendant is deceiving the public into believing that its syrup is made by the complainant, and thereby unlawfully availing itself of the complainant's reputation and extensive advertising; and, second, that the complainant has been, or at all events may be, injured by the sale by the defendant of an inferior product.

The first contention may be answered in the language of Lord Justice Bowen in Borthwick v. The Evening Post, supra, where the proprietors of a morning newspaper sought to enjoin the use by an evening newspaper of the same name:

"I do not hesitate to draw the inference that the title was taken to deceive somebody. But that is not enough. Is it calculated to deceive the public in a way which would injure the Morning Post? It may be that it is taken to deceive the public without injuring the Morning Post. In my opinion that is exactly what has happened in this case."

"Care must be taken in these cases," as Vice Chancellor Garrison said in Perlberg v. Smith, 70 N. J. Eq. 638, 62 Atl. 442, "not to extend the meaning of the word 'unfair' to that which may be unethical but not illegal. It may be unethical for one trader to take advantage of the advertising of his neighbor, but his so doing would in many cases be entirely legal."

Such is the case here. Doubtless it is deceptive, and therefore morally wrong, for the defendant to suggest or intimate that his goods are made by the complainant. But this does not give rise to a private right of action, because no interference with the complainant's trade is

shown. To punish an immoral, or even a dishonest, trader, without such proof, would be to enforce the police power of the state. The defendant may well, and does, assert that co-operative or joint association in the exploitation and sale of two food products consumed together tends to increase the sale of each. The defendant may, and probably does, profit by the use of this mark, but there is no proof of injury to·the complainant.

[5] With respect to the remaining contention, the bill alleges injury to the complainant by reason of the fact that the defendant's syrup is of an inferior quality and unfit for use. There is no proof which warrants any such finding, nor any indicating any probability that such will be the fact. It is urged, however, that the possibility remains. But a court of equity may not act upon a suggestion of possible injury; there must be proof at least of reasonable probability of injury.

The complaint is dismissed, but, under the circumstances, without costs to the defendant.