OHIO NATIONAL LIFE INSURANCE CO. *v.* OHIO LIFE INSURANCE CO.

[Cite as Ohio National Life Ins. Co. v. Ohio Life Ins. Co., 4 Ohio Misc. 240.]

(No. 79307.  Decided September 4, 1962.)

INJUNCTION: Common Pleas Court of Butler County.

*Mr. Jackson Bosch* and *Messrs. Bettinger, Schmitt & Kreis,* for plaintiff.

*Mr. Edwin B. Pierce, Mr. Paul Baden* and *Messrs. Vorys, Sater, Seymour & Pease,* for defendant.

CRAMER, J.  Once upon a time, some thirty-seven years ago, the defendant herein had its corporate birth.  It was named Inland Casualty Company, and the proud parent was The Ohio Casualty Insurance Company.

This child, though through the years its name was changed several times, never became emancipated.

The Ohio Casualty Insurance Company decided, the decision to be effective as of December 31, 1960, that its child should go out on its own and venture into a new and strange field—the life insurance business. Solely with that end in mind, it renamed this fledgling The Ohio Life Insurance Company and launched it upon the lucrative life insurance world; however, still unemancipated and wholly owned by its parent.

Never, in all life insurance history, had an offspring been launched under a more favorable climate. It had not only its parent's full blessings but that which was of greater practical value: all the Ohio Casualty Insurance Company's facilities which had been so successfully employed by it for many years. Among such are over 6,000 fire and casualty agents who will be utilized to promote and sell life insurance for this defendant.

The defendant's entrance into this big and highly competitive world of life insurance almost immediately precipitated it headlong against the opposition and resistance of plaintiff by reason of the name the defendant had adopted.

The plaintiff, incorporated under Ohio law, has been engaged in this state and elsewhere in the life insurance business for more than fifty years. It has had, from its very inception, the name it presently carries, The Ohio National Life Insurance Company, and, naturally, is zealously devoted to and protective of it.

It learned for the first time of defendant's intention to engage in the sale of life insurance on December 6, 1960—legal notice thereof appearing in "The Cincinnati Enquirer." The plaintiff, by letters, informed both the Secretary of State and the Superintendent of Insurance of Ohio of its and defendant's similarity of names and the likelihood of confusion resulting therefrom.

The defendant was asked to reconsider the use of its name. The parties met pursuant to plaintiff's request with the Superintendent of Insurance. On February 23, 1961, the Superintendent issued his Certificate of Authority to the defendant company over the objection of plaintiff.

Plaintiff brought an action in the Common Pleas Court of Hamilton County, Ohio, to enjoin the defendant from using the

name—The Ohio Life Insurance Company. That court sustained this defendant's motion to quash service upon it on April 17, 1961.

In the instant action, brought by plaintiff on May 3, 1961, it seeks to enjoin the defendant's use of the name, "The Ohio Life Insurance Company," in the conduct of its life insurance business in Ohio and elsewhere. By way of cross-petition the defendant seeks to have plaintiff enjoined from asserting that defendant is using its corporate name; from interfering with defendant's applications to do business in other states and from communicating with the officials of other states to assert that the defendant's name is improper or unlawful.

This cause is now before the court upon the pleadings, the evidence, and briefs of counsel. Oral arguments were heard after the briefs were submitted.

These pleadings and the evidence raise the single issue:

Is the name of the defendant so similar to that of the plaintiff as to lead to probable confusion and uncertainty on the part of the public thus resulting in unfair competition?

The court will therefore confine its consideration to the aforementioned issue and to its resolving the question of whether the plaintiff has sustained the burden of proving the affirmative of the foregoing issue by the requisite degree of proof and, if not, to the question of whether the defendant is entitled to the relief it seeks in its cross-petition.

The defendant claims that the petition raises a cause of action other than that which it has attempted to prove under the evidence. This we find to be without merit.

The evidence here submitted by the parties, in addition to the testimony of a number of witnesses and certain stipulations, consists of many, many exhibits, most of which are documentary in nature. Briefly summarized, such evidence is substantially as follows:

Plaintiff has, as hereinbefore stated, been engaged in the life insurance business in Ohio and elsewhere for over fifty years and rather recently went into the health and accident field. It has never sold any other type of insurance. It operates in twenty-eight states and is a mutual company. It ranks seventy-third in size among approximately 1400 life insurance companies in the United States and as of December 31, 1960,

had over $1,000,000,000.00 of life insurance in force and over $218,000,000.00 of assets.

It has more than 235,000 policies of life insurance and annuities in force of which over 42,000 are with Ohioans. It offers more than fifty policies of insurance plus its group health and accident policies.

Plaintiff deals with the public through agencies under written contract with it and has about 760 agency agreements in force—343 agents are employed on a full-time basis—are career agents. The plaintiff has an exclusive agency recruiting and training program and spends a considerable amount of money each year in carrying it out.

It expends money—thousands of dollars annually—to promote its business through all advertising media, the amount spent therefor increasing yearly.

The defendant's name at the time of its incorporation in 1925 was the Inland Casualty Company. On January 12, 1938, it took the name of The Ohio Insurance Company which it kept until January 1, 1961, on which date the word "Life" was inserted into its name producing the name it now bears. It is a stock company and is a wholly owned subsidiary of The Ohio Casualty Insurance Company and a member of the so-called Ohio Casualty Group.

Though the reason the defendant decided to incorporate the word "Life" into its name is not material to our inquiry, it is interesting to note that the defendant states it was done because some of the states in which it expected to do business required the word "life" to appear in the corporate name of a life insurance company.

The defendant is already licensed to sell life insurance in quite a few states in addition to Ohio in which plaintiff has been conducting its business for quite a number of years past. It is seeking admission to do business in other states in which plaintiff has done business for a number of years.

This defendant is selling life insurance and will, of course, continue to sell it through The Ohio Casualty Company's fire and casualty agents, of whom, as hereinbefore pointed out, there are approximately 6,000.

These agents, who are not "career agents" but in the main, brokers—will sell life insurance in addition to fire and casualty

insurance which is their "main line." In that respect they would be independent, that is, could sell for anyone they pleased.

It is quite apparent, from the evidence, that the defendant company was designed especially for the agents of The Ohio Casualty Company—giving them—as it were—life insurance to include in an offer to their clients as a "package deal."

"One stop insurance" service could thereby be provided.

"The Ohio Casualty Group" does the advertising for the group of companies including the defendant; thus a further indication that the umbilical cord attaching the defendant to its parent has not been severed.

It is the claim of plaintiff that its and the defendant's names are similar, "nearly corresponding" . . . "a general likeness" "closely resembling each other"; that "similar" does not mean "identical." It is also pointed out that the only difference in the names of plaintiff and defendant is the word "National."

It is claimed that the evidence shows that the public omits the word "National" from plaintiff's name and refers to it as "The Ohio Life Insurance Company" (defendant's name) in spite of plaintiff's efforts to emphasize "The Ohio National Life" over a period of many years. "Thus, the public will be unable to distinguish plaintiff from defendant—confusion and uncertainty will result and defendant will be unfairly competing with plaintiff."

The similarity in the names of these parties is, of course, apparent. This, then, narrows the inquiry to determine whether the similarity is such as to make it probable—likely—that confusion or uncertainty on the part of the public will result.

It seems that proof of actual confusion is not essential to granting relief. The determining factor is not that people have actually been deceived but that there is a likelihood of that happening (See *Metropolitan Life Insurance Co.* v. *Metropolitan Insurance Co.*, 277 F. 2d 896; *The Cleveland Opera Co.* v. *The Cleveland Civic Opera Association, Inc.*, 22 Ohio App. 400; Nims, Unfair Competition and Trade Marks, 3d Ed., Pages 1048 and 1049; *Admiral Corp.* v. *Penco, Inc.*, 203 F. 2d 517 at pg. 520).

The plaintiff asserts that it has produced evidence—considerable evidence—consisting of testimony and numerous ex-

hibits showing both the likelihood of and actual confusion arising from the names' similarity.

The evidence disclosed that policyholders of The Ohio State Life Insurance Company frequently made their checks in payment of premiums payable to the Ohio Life Insurance Company; communications were addressed to Mr. Dodson, the president of the plaintiff company, by designating him as president of The Ohio State Life Insurance Company of Columbus, Ohio, and delivered to that company. Other instances were shown of mistakes made by policyholders in addressing individuals at one of these two companies with which they were not connected but held positions in the other. Also, instances were shown where confusion between The Ohio State and The Ohio Life companies were shown to have occurred within the insurance industry itself. No instance of confusion was shown as to the plaintiff and defendant.

It is finally claimed by plaintiff that the defendant is in direct competition with it and the opportunity for increasing confusion and deception (admittedly non-wilful on defendant's part; also, there is no evidence of fraud, deceit or attempt to mislead) will grow as plaintiff spends large sums of money advertising its business through all media, making the insurance buying public further aware of its name.

It is also feared that irreparable damage will result to plaintiff by reason of unfavorable publicity which naturally results from confusing plaintiff with a company associated with a casualty insurance company (The Ohio Casualty) in the settlement of casualty claims.

The defendant advances a number of reasons why plaintiff is not entitled to the relief it seeks and why the prayer of its cross-petition should be granted. These reasons are as follows:

(1) The administrative practice followed by the Secretary of State and Superintendent of Insurance of Ohio for eighty-four years, of determining insurance companies with similar sounding names to do business in Ohio is decisive and controlling.

(2) The names of the parties are not so similar as to lead to confusion or uncertainty on the part of the public.

(3) Even if the names of the parties are similar, the fact

that they reach the public only through agents prevents confusion.

(4) It is against the public interest to grant a monopoly in the use of a common word like "Life" and plaintiff is seeking to monopolize the words "Life" and "Ohio" although it has not adopted, used or advertised these words as a "trade name" or "service mark."

(5) No evidence of injury or loss to plaintiff caused by defendant or its name has been shown.

Under (1) above, the defendant claims that:

"The general and uniform practice followed by three state officials (Superintendent of Insurance, Secretary of State and Attorney General) in approving the name, The Ohio Life Insurance Company, should be given the same weight as an adjudication to the same effect."

It is further asserted (and we agree with counsel for plaintiff's characterization thereof as "Bold") that:

"For eighty-four years the General Assembly has realized that the insurance superintendent, a full-time administrator who deals with insurance companies, agents, and the public, on insurance matters every day, is 'better qualified' than the courts to determine the existence of confusing similarity of names of insurance companies."

Thus, the defendant urges that:

"The continuous, uniform administrative interpretation of the Ohio laws applied in practice to the names of insurance companies is controlling and decisive, and should not be upset by Ohio courts."

We fear that counsel for defendant in making the foregoing assertions, reveals that he has been unable to completely rid himself of the philosophy he apparently acquired as the Superintendent of Insurance of Ohio, a position, we learn from plaintiff's brief, he once held.

In our opinion, the actions of these administrative officers of the state of Ohio can be given no probative value, and the defendant has cited us to no pertinent Ohio authority which suggests, let alone requires, that we should.

In effect, counsel for defendant is also asking us to accept the actions of these officials as the expressions of expert opinions that confusion and uncertainty will not result from the use

by the defendant of its name. Such an invasion of the province of this court sitting as the trier of the facts, of course, is not to be permitted.

We approach the consideration of the reason labelled No. 2 above—advanced by the defendant why plaintiff should not succeed here, keeping in mind whether or not corporate names are so similar as to be calculated to produce confusion is regarded as a question of fact. And that the test is whether the similarity (in names) is such as to mislead a person using ordinary care and discrimination.

It has been said that the confusion of which the court takes cognizance must be something more than that resulting from carelessness or ignorance on the part of the uninformed. See Annotation 115 A. L. R. 1247, and the cases therein cited.

It is our view that the similarity in the names of these parties is not so manifest that the public is likely to be confused thereby.

Proof, therefore, must be submitted by plaintiff of a probability that confusion and uncertainty will arise and that the public will be misled as to the identity of each of these corporations. Such proof must be substantial. In the *Cleveland Opera case, supra* (22 Ohio App. 400 at pg. 403), Judge Sullivan, in the course of his opinion, made the following statement—referring to the degree of proof required—

"[It] must be of a strong and convincing nature on the question of probability of confusion. Under the authorities as we apply them to this point in the case at bar, the evidence may not be fanciful or conjectural, for then it would not be a basis for substantial damages, and the degree of proof required must lead to damages of a substantial nature."

Here, it is not reasonably deducible from the names themselves that probability of confusion and uncertainty will arise in the minds of the public dealing with these corporations. And, in the words of Judge Sullivan (*Cleveland Opera case*) we must look to the record as well as the names themselves.

Applying the foregoing tests to the evidence before us and bearing in mind that the extraordinary remedy of the injunctive process is sought to be invoked by plaintiff, we must conclude, even considering the evidence admitted by the court which the defendant labels as hearsay, that it falls short of

showing—it does not preponderate to the effect—that a person using ordinary care and discrimination would be misled, be confused and be deceived, by reason of the similarity in plaintiff's and defendant's names.

The following portion of an excerpt from the case of *G. W. Cole & Co.* v. *American Cement & Oil Company,* 130 F. 703, seems applicable here:

"Whether such confusion has been or is likely to be produced by the acts charged is a question of fact to be resolved either by evidence of actual sales of the one product for the other, of actual mistake of the one for the other, of fraudulent palming off of the one for the other, or, on the other hand, failing such evidence, by comparison of the two brands to determine whether the one can be readily mistaken for the other, even by the inattentive and unobserving retail purchaser."

The various exhibits before us—hereinbefore referred to—offered by plaintiff in supprt of its claim that confusion and uncertainty on the part of the public will likely result from the similarity in names, constitute nothing more than evidence of "carelessness" or "ignorance" on the part of some "uninformed" individuals. In the case of *Central Mutual Auto Insurance Company* v. *Central Mutual Insurance Company,* 275 Mich. 554, 267 N. W. 733, the court stated:

"Defendant is not an insurer against the ignorance or carelessness of particular individuals * * *."

There has been no showing here that the similarity existing in the names of the parties will probably mislead the public to plaintiff's injury or detriment.

A further reason, compelling the conclusion that the similarity of names here encountered has not and will probably not cause confusion on the part of the life insurance-buying public, is found in the fact that such public is reached by these parties through agents. Agents who, of course, know for what company they are selling.

Since the business of life insurance companies is conducted through agents or brokers or insurance experts of large concerns rather than with the general public, a greater degree of similarity is permitted in respect to the corporate names of such companies. See *Standard Acc. Ins. Co.* v. *Standard Surety and Casualty Company,* 53 F. 2d 119; Ann. 115 A. L. R. pg. 1245.

It might even be judiciarily noticed that the life insurance buyer purchases such insurance, not from a particular company by name, but from an agent known to the buyer and one in whom he has confidence.

In the defendant's case, its agents and their life insurance prospects have established such acquaintanceship and confidence through their previous dealings in the sale and purchase of fire and casualty insurance.

Such agent has—to adopt the vernacular—his "foot in the door" of the home of his prospect. There is little, if any, likelihood that the buyer will be deceived into thinking he is buying a policy in plaintiff's company. As a matter of fact, in most instances, he will not know or even care to know the name of the company the agent represents. He will rely upon his friend the agent to place the business in a good reliable company.

The plaintiff states in its brief:

"The fact that insurance of both these companies is sold to the general public through agents may have some effect in limiting the extent of confusion at point of sale, *but incidents of confusion are not limited to initial sale.*" (Emphasis theirs.)

It is its position that:

"Life insurance is not a product that is purchased, paid for and consumed—that payment of premiums and various other acts and transactions are engaged in by policyholders and the companies over a period of many years and that, therefore, the area of confusion must not be limited to the initial sale."

Even if this be true, nevertheless, the main area where the feared unfair competition will occur, is found in the life insurance market place. The greatest detriment, if not the only detriment, plaintiff would sustain from such competition would be caused by the misled, deceived insurance-buying public and not by those engaging in various transactions with the plaintiff following the purchase of their policies.

Furthermore, even in most of those dealings (with the possible exception of premium paying) the agent is used or readily offers his services.

We do not find that plaintiff has shown its name "qualifies it to claim the relief prayed for under the doctrine

of 'secondary meaning' " as that term has been defined by the courts.

Assuming for the sake of argument only, the evidence does show—as plaintiff claims—that the name "Ohio National Life" has acquired a secondary meaning by long usage, it by no means follows that it has thereby gained the exclusive right to use "Ohio Life." On the contrary, the evidence shows that the plaintiff has not adopted "Ohio Life," never made use of it in its advertising but sought rather to be known as "Ohio National Life" and disclaims even now any desire to be known as "Ohio Life."

The secondary meaning doctrine, the validity of which we recognize, would apply had we found—which we do not—that "Ohio Life" had come to mean the plaintiff in the public's mind. The requisite long usage by plaintiff of "Ohio Life" is here absent.

We, therefore, find upon the issues raised by the pleadings and the evidence in favor of defendant upon plaintiff's petition and in favor of defendant and against plaintiff upon defendant's cross-petition. Plaintiff is denied the injunction sought and defendant is granted the relief it seeks in its cross-petition.

We wish to make this final observation: this cause was very ably and well tried, briefed and argued. The court is grateful to counsel for their excellent and very competent briefs which were of great value to it. We made a thorough study of and read many of the authorities therein cited. We gave what we believe to be a full consideration of the evidence submitted as gathered from our copious notes made during the trial. All this, together with time consumed in much trial work, produced the delay in deciding this case which has occurred since May 5, 1962, on which date it was finally submitted to us. Our apologies for such delay to counsel and their clients and gratefulness for their patience.

*Judgment accordingly.*