## ·BATES MFG. CO. v. BATES NUMBERING MACH. CO.

(Circuit Court, D. New Jersey. September 25, 1909.)

1. TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNLAWFUL COMPETITION—FRAUD —DECEPTION OF PUBLIC.

In a suit to restrain unlawful competition, equity does not concern itself with the means. If. the result is fraudulent, and the public are induced thereby to purchase the goods of one under the belief that they are those of another, the means will be enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*

Misleading or false labels, see note to Raymond v. Royal Baking Powder Co., 29 C. C. A. 250.]

2. TRADE-MARKS AND TRADE-NAMES (§ 68*)—"UNFAIR COMPETITION"—ELEMENTS.

Unfair competition does not necessarily involve the violation of any exclusive right to the use of a word, mark, or symbol as it may arise from the use of words, etc., which everybody may use; the test being whether what has been done tends to pass off the goods of one for those of another, or to deprive such other of his rights.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. § 68.*

For other definitions, see Words and Phrases, vol. 8, pp. 7174, 7824.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

3. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNLAWFUL COMPETITION—USE OF CORPORATE NAME.

From 1891 to 1902 complainant alone made and sold a "Bates Automatic Hand Numbering Machine," having a consecutive duplicate and repeat movement, during all of which time and for several years thereafter it extensively and exclusively advertised the machine as "The Bates Numbering Machine," so that the purchasing public understood such name to exclusively designate complainant's machines. Bates, the patentee, under whose patents the machine was manufactured, severed his connection with complainant in 1895, afterwards organizing a corporation under the name "Bates Machine Company." In 1902 defendant under that name began manufacturing computing machines then designated as "Model No. 49" and "Model No. 50." In 1908 complainant obtained an injunction restraining defendant from putting out hand numbering machines in boxes bearing labels in imitation of those appearing on complainant's machine, whereupon defendant in 1909 changed its name to the "Bates Numbering Machine Company," and referred to its competing machines not by model numbers, but as "Bates Numbering Machines," in its advertising, etc. Held, that such use of the word "Bates" in connection with numbering machines constituted unlawful competition, and that complainant was entitled to injunction restraining defendant's use of the words "Bates Numbering Machine Company" as its corporate name, and from using any other words resembling "Bates Numbering Machine," the effect of which would be to mislead the public to believe that defendant's machines were those manufactured by complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*

Use of corporate and firm names, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 79; Kathreiner's Malzkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 357.] ·

In Equity. Suit by the Bates Manufacturing Company against the Bates Numbering Machine Company to restrain an alleged unfair com-

petition in trade. On motion for preliminary injunction. Heard on bill, with supporting and opposing affidavits. Granted.

See, also, 141 Fed. 213.

The complainant seeks to enjoin the defendant from the use of its corporate name, "Bates Numbering Machine Company," and from using the expression "Bates Numbering Machine," in connection with the sale of automatic hand numbering machines not of the complainant's make, and from filling orders calling for a "Bates Numbering Machine" with a machine other than that of the complainant, and from seeking to induce prospective purchasers to change orders, proposals, and awards calling for a "Bates Numbering Machine" so as to describe or specify a machine other than that of the complainant. The bill charges that the defendant changed its name from the "Bates Machine Company" to the "Bates Numbering Machine Company" fraudulently for the purpose of deceiving the public, and to obtain the benefit of complainant's advertisement and business reputation, and to identify itself and its business with that of complainant, and to palm off its goods as that of the complainant; that the defendant has ever since such change of name been offering and advertising for sale its automatic hand numbering machines under the tradename and designation "Bates Numbering Machines," and has used and is using its corporate name "Bates Numbering Machine Company," and has and is wording its advertisements in such a way as to make it deceptively appear that the defendant is selling and offering for sale complainant's genuine "Bates Numbering Machines," and has sold and is selling its said numbering machines as those of complainant's manufacture, and that it has by the use of its corporate name and the said trade-name "Bates Numbering Machine" in its advertisements, etc., induced such purchasers to purchase defendant's automatic hand numbering machines as and for the machines of the complainant's manufacture, which such purchasers desired, and would have purchased from complainant had they not been deceived by the defendant's said fraudulent acts, with the result that the public has been deceived and complainant injured in its business. The bill thereupon prays that the defendant be perpetually enjoined from any further use of the word "Bates Numbering Machine Company" as its corporate name, or of any other words of such corporate name as would sufficiently resemble complainant's trade-name "Bates Numbering Machine," as to be likely to deceive or mislead the public into believing that the defendant's automatic hand numbering machine was complainant's product, and from employing or using the expression "Bates Numbering Machine" in connection with its sales of any automatic hand numbering machines not of complainant's make, or in connection with the offering or advertising the sale thereof, and from filling any orders for "Bates Numbering Machines" with any other than complainant's machines, and from seeking to induce prospective purchasers to change orders, proposals, and awards calling for "Bates Numbering Machines" so as to describe or specify a machine other than that of the complainant, and for a provisional injunction to like effect during the pendency of the suit.

The following statement of facts found from such affidavits is necessary for a proper understanding of the questions raised:

Both complainant and defendant are corporations. The former was organized in 1890 under the laws of the state of New York, the latter in 1899 under the laws of the state of New Jersey. Both parties have from the time of their respective incorporations been engaged in the manufacture of various kinds of numbering machines designed by Edwin G. Bates, whose surname was used in the corporate title of each of these corporations. He was the patentee of these numbering devices, and an incorporator and stockholder of each of said corporations, but not at the same time. He severed his connection with the complainant about the year 1895, selling his stock holdings in that company, and began the business of manufacturing and selling hand numbering machines on his own account, carrying on the business for a short time in his own name, then using the name "Bates Machine Company." Subsequently the corporation of that name was organized, and the business enlarged and continued in that name until the change of name hereafter referred to. The complainant, about the year 1891, began the manufacture and

sale of an automatic hand numbering machine, capable of printing in consecutive order from one to any number having no more than seven digits, and of duplicating, triplicating, and quadruplicating any particular number, before advancing automatically to the next higher number, and, by the use of an adjustment, of repeating any of such numbers as many times as desired. That to each of such machines a name plate was affixed, bearing complainant's name and the words "Bates Automatic Numbering Machine" as a trade-mark. That in the year 1891 or 1892 complainant began, and ever since has continued, to advertise said machines in various publications and trade journals published in the United States, designating said machines as "Bates Numbering Machines," and has at all times in selling said machines applied thereto the words "Bates Automatic Numbering Machines," and designated the same in its advertisements by the trade-name "Bates Numbering Machine." That as a result of complainant's skill and enterprise in advertising said machines, and their satisfactory character, it obtained an extensive and lucrative business in said machines, and the name "Bates Numbering Machine" became widely and favorably known in connection therewith throughout the United States, and became associated and identified with the automatic hand numbering machine of complainant's manufacture, and with such machines only, in the minds of the public and the trade generally. That from the defendant's incorporation until 1902 or 1904 (the exact year being in dispute) numbering machines manufactured and sold by it were of a different character and served a different use from those manufactured by complainant. That about 1902 the defendant for the first time manufactured and sold an automatic hand numbering machine having consecutive, duplicate, and repeat movement, which came into direct competition with the complainant's said machine, and which the defendant catalogued as its model No. 49. That in the year following it placed another similar machine on the market, cataloguing it as Model No. 50. That each of said type of machine had a plate affixed thereto, describing it by model number and name and address of defendant. That on the 31st of July, 1905, complainant filed its bill in this court against the defendant "The Bates Machine Company," praying that it be enjoined from using the name "Bates" on any hand numbering machine or on the packages containing the same, or in any way connected with the sale or offering for sale thereof, or in any way whatsoever calculated to deceive the public, and from imitating the labels appearing on the boxes in which the complainant's numbering machines were packed. That as a result of the proceedings had in such cause said defendant by a decree of this court dated September 28, 1908, was enjoined from putting out automatic hand numbering machines in boxes bearing labels in imitation of the labels appearing on the boxes in which complainant's machines were packed.

That subsequently, to wit, on or about the 15th day of January, 1909, defendant changed its name to the "Bates Numbering Machine Company." That prior to this change of name the automatic hand numbering machines manufactured by defendants, which came in competition with complainant's machines, were known by the trade as Model No. 49 and No. 50, and not as "Bates Numbering Machines," and were not described as "Bates Numbering Machines" in defendant's advertisements, but as models No. ———— (the appropriate letter or number following), but that subsequently thereto they were referred to as the "Bates Numbering Machines." That since, and by reason of such change of name, and the advertising of the defendant's machines as "Bates Numbering Machines," confusion has arisen in the trade as to the identity of these corporations; some of the trade addressing the one to the other's place of business under the impression that they were one and the same party. Several customers of the complainant gave orders to the defendant for its machines under the belief that they were giving such orders to the complainant for its machines.

Delos Holden (Melville Church, of counsel), for complainant.
John W. Queen, for defendant.

RELLSTAB, District Judge (after stating the facts as above). Without attempting to define what under the adjudicated cases will be

enjoined as unfair in business competition, some of which will presently be cited, it may be said for present purposes that equity does not concern itself as to what the means, how, or with what intent they are used, if the result is fraud, and, if the public are induced thereby to purchase the goods of one under the belief that they are those of another, such means will be enjoined.

In Ludlow Valve Mfg. Co. v. Pittsburg Mfg. Co. (C. C. A.) 166 Fed. 26–29, it was said:

"No arbitrary rules have ever been, nor ever can be, laid down by which courts of equity will furnish this protection. To establish such rules would, like definitions in the law, furnish the means by which fraud could successfully accomplish its ends."

In Howe Scale Co. v. Wyckoff et al., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972, it was held that:

"The essence of the wrong in unfair competition consists in the sale of the goods of one person for that of another, and, if defendant is not attempting to palm off its goods as those of complainant, the action fails."

"Every man has a right to use his name reasonably and honestly in every way, whether in a firm or corporation. * * * It is not the use, but dishonesty in the use of the name, that is condemned."

The following from Nims on Unfair Business Competition, supported by the cases cited by him, are helpful in deciding this case:

Unfair competition does not necessarily involve the violation of any exclusive right to the use of a word, mark, or symbol. It may arise from the use of words, etc., which everybody may use. The question is whether what was done in a special case tends to pass off the goods of one for those of another, or tends to deprive such other of his rights. If a name purely generic or descriptive or indicative of general qualities such as any one may use has by long association with goods of one person come to mean to the public his goods alone, and not such goods in general, other persons will be prohibited from using it. Pages 8 and 9.

"A trade-name may be either the name of the manufacturer of goods, or some name by which the manufactured goods have become generally known. There is a kind of property in such a name, and interference with it will be restrained by the court if there is a prospect of injury to the owner of it." Pages 22 and 23.

Rival manufacturers have no right by imitative devices to beguile the public into buying their wares under the impression that they are buying those of their rivals. Page 25.

A name may be so appropriated by user as to come to mean the goods of the plaintiff. Where such is the case, "the use of that name or one so nearly resembling it as to be likely to deceive as applicable to goods not plaintiff's may be the means of passing off those goods as and for the plaintiff's just as much as the use of a trade-mark." Pages 27 and 28.

"When one has established a trade or business in which he has used a particular name so that it has become known in trade as a designation of such person's goods, equity will protect him in the use thereof." Page 34.

Out of this difficulty which the courts have found in preserving this right which every man has to use his own name, and at the same time preventing injury and fraud arising from the exercise of that right, the doctrine of secondary meaning has been evolved. Words which form a part of the common stock of the language may become so thoroughly identified with some one person's business or goods that it is quite possible that the use of them alone without any qualifying words or other explanation by another manufacturer would deceive buyers into believing that there was but one concern or one brand of goods instead of two. Page 138.

On the same principle that one must not pass off his goods as those of another, he must not use his trade-name in such a way as to give the impression that it is the trade-name of another. Page 164.

A corporate name is chosen by the incorporators themselves, and, as they can make it what they will, their rights arising from its possession are less important and their responsibility for its use is greater than in the case of their own personal name. Page 197.

"No name may be chosen in naming a corporation which will cause the new corporation to be passed off as some other company already in existence, or that will, when attached to the goods made by the new company, pass those goods off as the goods of some other company." Page 206.

Applying the foregoing principles of law to the facts in this case, the solution is not difficult. From 1891 to 1902 or 1904 (the year being in dispute) complainant alone made and sold a "Bates Automatic Hand Numbering Machine," having a consecutive, duplicate, and repeat movement. During all this time, and for several years after, it extensively and exclusively advertised this machine as the "Bates Numbering Machine," and the purchasing public understood that such trade-name exclusively designated complainant's machine. This machine distinctly filling a trade want, the complainant obtained a large and lucrative business in dealing therein. About the year 1902 defendant, then named "Bates Machine Company," began the manufacture and sale of an automatic hand numbering machine, with like movements, and accomplishing the same purpose as that of the complainant. At first it made but one kind of such machine, which it designated as Model No. 49, soon following it, however, with another which it designated as Model No. 50. In cataloguing, marking, and advertising such machines they were not designated as "Bates Numbering Machines," but as "Automatic Hand Numbering Machines Model No. 49 or 50." The name of the defendant "Bates Machine Company" as the manufacturer of such machines appeared with such marking, publication, and advertising. This designation in marking and advertising defendant's machines continued until after it changed its name, which took place on January 15, 1909. The course of the defendant up to this date was perfectly proper and legal. It had a right to put upon the market an automatic hand numbering machine in direct competition with the complainant, even to an exact duplication of its mechanism, if it did not infringe upon its patent rights. No such infringement is alleged. Its method and character of advertisement were unobjectionable. Nothing therein would suggest an attempt to trade on the reputation of an older competitor. Every ordinary intelligent person would see at once that a new competitor had entered the market.

A new condition of things took place, however, with the change of name and the change in the wording of the advertisement of such machines. Neither the "Bates Machine Company" as the name of the defendant, nor the advertisement of its machines as "Model No. 49 or 50," as manufactured by it, could be confused with the name of the complainant or the trade-name of its product, viz., "Bates Numbering Machine." But not so when it changed its name to the "Bates Numbering Machine Company," and began to advertise its machines by the same name as theretofore exclusively used to designate and advertise the machines of the complainant, and which name had then become firmly fix-

ed in the mind of the trade and purchasing public as associated with the complainant's product. Not only confusion, but deception, was the necessary result of such conduct. A trade-name is usually more striking than the name of its user. It is likely to give more information about the product and calculated to make a more lasting impression on the mind than a mere trade-mark. Where such trade-name of the product is dissimilar to that of the manufacturer, it is likely to be remembered, even though the name of the person entitled thereto is overlooked or forgotten. Faulder & Co., Ltd., v. O. & G. Rushton, Ltd., 20 R. P. C. 477. In such a case such trade-name obtains a secondary meaning, even though in its primary sense it is not subject to the exclusive ownership of the trader.

In the recent case of Lowe Bros. Co. v. Toledo Varnish Co. (C. C. A.) 168 Fed. 627, it was held:

"The words 'High Standard' as applied to paints or varnishes are in themselves descriptive of quality, and cannot be monopolized as a trade-mark, but, where they have been used for a number of years by one manufacturer exclusively for a trade-mark, and have thereby acquired a secondary meaning with the trade and public as designating and identifying the products of such maker, their use by another in connection with similar goods in a way which may probably deceive purchasers will be enjoined as unfair and fraudulent competition."

The instances of confusion and deception shown in complainant's affidavits are but the natural consequences of the change of defendant's name and the changed wording of its advertisements. A glance at defendant's advertisements appearing in the April (1909) numbers of the magazines "System" and "Office Appliances" will convince of this. The headlines to both of these advertisements, "23 Cents Puts a Bates Numbering Machine on Your Desk," is the most prominent part thereof. It is not only displayed in larger and heavier type, but so blocked out as to make it the most striking to the eye. Without the advertiser's name and address, the trade would accept the whole as describing and advertising the complainant's machine. If the defendant's name were not so completely identified with the trade-name of the goods advertised, both a deception of the public and the diversion of the complainant's business would be the likely consequences; but with the changed name of the defendant nothing else could reasonably be looked for. The street or factory address added to defendant's name would not be likely to change such result. The reason for this is obvious, as between the flaring headlines proclaiming the trade-name and the name and address of the advertiser, the latter plays a minor part in the impression made on the mind of the reader. The jobber, because of his more frequent purchases, might readily see that a different concern was advertising, but not so the ultimate purchaser. To the latter the trade-name is associated with the reputation of the product rather than the name of the manufacturer. Lured by the advertisement of this old trade-name he would be as likely to send the order to the advertiser as to the rightful owner of such trade-name under the belief that he was dealing with the latter. The reprehensible purpose evidenced by this method of advertising is at least as striking

as that condemned in Ludlow Valve Mfg. Co. v. Pittsburgh Mfg. Co. (C. C. A.) 166 Fed. 30.

The logical, and perhaps desired, result of such conduct on the part of the defendant is, first, a deceiving of purchasers into giving it their custom under the belief that they were dealing with the same parties whose goods had become favorably known under such trade term; and, second, the gradual appropriation to itself of the favorable reputation which the complainant had built up for its own goods through years of toil and at considerable expense. In this case the facts in the particulars that control the decision are similar to those in Wm. Rogers Mfg. Co. v. R. W. Rogers Co. (C. C.) 66 Fed. 56, affirmed R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 70 Fed. 1017, 17 C. C. A. 576; Garrett et al. v. T. H. Garrett & Co., 78 Fed. 472, 24 C. C. A. 173; J. & P. Coates, Ltd., v. John Coates Thread Co. (C. C.) 135 Fed. 177; Charles S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; F. E. De Long v. De Long Hook & Eye Co., 89 Hun, 399, 35 N. Y. Supp. 509; Dodge Stationery Co. v. Dodge, 145 Cal. 380, 78 Pac. 879; Bissell Chilled Plow Works v. T. M. Bissell Plow Co. (C. C.) 121 Fed. 357; Lamb Knit Goods Co. v. Lamb Glove & Mitten Co., 120 Mich. 159, 78 N. W. 1072, 44 L. R. A. 841; International Silver Co. v. Wm. H. Rogers Corp., 67 N. J. Eq. 646, 60 Atl. 187, 110 Am. St. Rep. 506; North Cheshire & Manchester Brewing Co. v. Manchester Brewing Co. (1899) App. Cases, 83, in which the use of the corporate title was enjoined. To the same effect, see, also, Clark Thread Co. v. Armitage, 74 Fed. 936, 21 C. C. A. 178.

In my opinion the complainant has shown a clear case of unfair competition; and, in view of the former finding by this court that the defendant was guilty of unfair competition towards this complainant in imitating its labels, immediate, even though drastic, relief should be afforded. A preliminary injunction is granted restraining the defendant from any further use of the words "Bates Numbering Machine Company" as its corporate name, or as such corporate name any other words which sufficiently resemble the said trade-name of the complainant's product, to wit, "Bates Numbering Machine," as to be likely to mislead or deceive the public into thinking or believing that the automatic hand numbering machines put out by the defendant are the product of the complainant, and from employing or using the expression "Bates Numbering Machine" in connection with the sales of any automatic hand numbering machines not of the complainant's make, or in connection with the offering or advertising for sale thereof, and further restraining the defendant from filling any orders or awards calling for a "Bates Numbering Machine" with a machine or machines of other make than that of complainant, or from seeking to induce prospective purchasers to change orders, proposals, and awards calling for a "Bates Numbering Machine," so as to describe or specify a machine or machines of other make than that of the complainant, without at the same time clearly and unmistakably informing such purchaser that the machines made by the defendant are not those made by the

"Bates Manufacturing Company," and that such company and not the defendant began to advertise, and for many years exclusively advertised, said machines by the trade-name "Bates Numbering Machine."