230    APPELLATE COURTS OF ILLINOIS.

DeLong H. and E. Co. v. Hump H. Mfg. Co., 216 Ill. App. 230.

## The DeLong Hook and Eye Company, Appellant, v. The Hump Hairpin Manufacturing Company, Appellee.

### Gen. No. 24,636.

1. TRADE-MARKS AND TRADE NAMES, § 26*—*what shown by evidence on bill for unfair competition.* On a bill for unfair competition seeking to enjoin defendant from the use of the word "Hump" in connection with the manufacture and sale of hairpins and similar articles, evidence *held* to show that the words "Hump" and "See that hump," which had for 27 years been used by complainant in connection with hooks and eyes manufactured by it, had become synonymous in the trade with complainant and their secondary meaning had come to indicate complainant's goods, that the use of the word "Hump" by defendant in connection with its hairpins tends to deceive, that defendant and its predecessor knew of complainant's use of those words when they began to use them and that such use by defendant was for the purpose of obtaining the benefit of complainant's advertising.

2. TRADE-MARKS AND TRADE NAMES, § 26*—*what is gist of suit for unfair competition.* The gist of a suit for unfair competition is the selling or disposing of his own goods by defendant as those of complainant, to complainant's damage.

3. JUDGMENT, § 428*—*when defense of res adjudicata cannot be raised against bill to restrain unfair competition.* A judgment of the District Court of Columbia on appeal from the commissioner of patents is interlocutory, consequently the defense of *res adjudicata* based on such a judgment cannot be raised against a bill to restrain unfair competition, though the trade-mark involved is the same in both proceedings.

4. TRADE-MARKS AND TRADE NAMES, § 26*—*when conduct constitutes unfair competition.* If the conduct of one trader is such as to lead the public to believe that his goods are those of another trader, to the latter's injury, such conduct constitutes unfair competition, irrespective of the registration of trade-marks by either of them.

5. TRADE-MARKS AND TRADE NAMES, § 21*—*when right to protection against unfair competition is not lost by expiration of patent.* A trader's right to protect himself against unfair competition through the use by others of words which have been so long applied to a patented article manufactured by him as to have acquired a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

DeLong H. and E. Co. v. Hump H. Mfg. Co., 216 Ill. App. 230.

secondary meaning indicating his goods, is not lost by reason of the fact that the patent on such article has expired.

6. TRADE-MARKS AND TRADE NAMES, § 22*—*extent to which arbitrary trade name may be protected.* The right of one who has adopted an arbitrary trade name and applied it to a particular line of goods to protection against unfair competition in the use of such name is not limited to that particular line of goods, but he may also protect the use of the name to any extent necessary to protect the reputation of his goods which will include protection against the use of such name by a subsequent trader as applying to any one of the species of the general kind of goods manufactured and sold by the first trader.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded with directions. Opinion filed December 31, 1919. Rehearing denied January 15, 1920.

RUSHMORE, BISBEE & STERN and MOSES, ROSENTHAL & KENNEDY, for appellant; CHARLES E. RUSHMORE and GEORGE N. HAMLIN, of counsel.

JUDAH, WILLARD, WOLF & REICHMANN, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

The complainant, who is appellant here, appeals from a decree which dismissed its bill for want of equity.

The bill was for unfair competition and its prayer was that the defendant, "be enjoined from putting up, delivering, selling, advertising or offering for sale hairpins or any other similar articles under the trade-mark, trade name or name 'Hump,' alone or in combination with other words, or in the corporate title of the defendant, or in any manner simulating the name 'Hump' * * *."

Certain material facts which seem to be uncontradicted are as follows: The complainant is a corporation, organized under the laws of Pennsylvania, having

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

its place of business in Philadelphia, in that State. It is engaged in the business of the manufacture and sale of notions, and, in particular, the manufacture and sale of hooks and eyes and hairpins. It is the owner, by succession and assignment, of an invention made in 1889 by one Frank E. DeLong, for which letters patent were granted to said DeLong and others in that year. This patent has expired.

This invention is described in complainant's bill as "An improvement in hooks or fasteners for garments, consisting of a hook proper and a shank formed of substantially parallel bars and a curved spring tongue, having its free end forming a loop coincident with the bend of the hook, said tongue and loop being intermediate of said bars and having the central bar of the shank bent forward out of the plane of the other bars, forming what is called a 'Hump' acting as a spring to prevent accidental disengagement of the hook and eye members one from the other, and permitting of easy engagement of the hook with the eye, or of its disengagement therefrom by the wearer of the garment to which the hook and eye are attached."

These goods complainant and its predecessors and assigns have continually manufactured and sold since 1889. About the same time they adopted and have ever since adopted and used, as a trade-name or mark by which to distinguish said hooks and eyes from other kinds thereof, the words "Hump" and "See that Hump." On April 19, 1892, these words were by the complainant or its predecessors duly registered as trade-marks, as applied to hooks and eyes, with the commissioner of patents. The phrase "See that Hump" as used by complainant was connected by a dotted line with the shank of the hook and eye. This was the first time this word "Hump" had been used in connection with notions of any kind. Complainant and its predecessors have ever since continued to use these words to designate hooks and eyes manufactured and sold by them, and complainant has expended and

is now expending large sums of money in advertising the same, and by means thereof has acquired a large and profitable business in the United States and Canada, and including the State of Illinois. The words "Hump" and "See that Hump" have for 27 years been used by complainant in conjunction with the word "DeLong." This combination of words appears on all the letterheads, invoices and billheads used in complainant's business. While complainant has dealt in hairpins, it has not used these words "Hump" or "See that Hump" as a name therefor; nor attached these names to the package in which its said hairpins are sold. On the contrary, it has applied to its hairpins the names and trade-marks which have been registered by it, "DeLong," "Diana," "Cupid." Complainant does not make or sell hairpins other than the conventional two-pronged kind.

The defendant corporation is the owner by assignment from its predecessors of letters patent for an improvement in hairpins issued to one Solomon Goldberg, December 29, 1903. The essential characteristics of this hairpin are that it has three instead of the conventional two prongs, and one of these prongs has a bend or hump in it, evidently made upon the same mechanical principle as the hook, which was invented by complainant's predecessors. On December 6, 1904, defendant's predecessors in title registered as trademark, the words "Hump, It Locks the Locks," as applied to hairpins. On April 16, 1907, a trade-mark as applied to hairpins, of the words, "Hump Hairpins, Lock the Locks," and on June 3, 1913, a trade-mark for hairpins, consisting of a camel with a hairpin for its hump, and underneath the words, "Hump, registered by Hump Hairpin Company, * * * in the United States Patent Office." It is also the owner of a patent for a machine used in the manufacture of the patented hairpin. The defendant was organized by Goldberg in the State of West Virginia, November 12, 1914; the trade-marks above described have been trans-

ferred to it. It maintains an office in Chicago, Illinois, and is engaged in this State and throughout the United States in the sale of hairpins, using said trademarks in connection therewith.

In 1909, the complainant having learned for the first time of the application for this last named trade-mark, filed an opposition to the granting of it with the commissioner of patents, which was by him sustained. Defendant appealed to the Court of Appeals of the District of Columbia, and the opposition was overruled, and the registration of the trade-mark ordered. *De-. Long Hook & Eye Co. v. Hump Hairpin Co.,* 39 App. Dist. of Columbia 484. The court there said:

"The question on which the case turns in our opinion is whether hooks and eyes and hairpins are of the same descriptive properties. * * * It is not sufficient for the opponent to say that he believes he would be damaged. He must allege some facts showing an interest in the subject-matter from which the damage might be inferred. If he has not used the mark as a trade-mark upon goods of a like description, he can suffer no damage from its registration by another."

The court also expressed a doubt as to whether there was proof of sufficient use by defendant to entitle its mark to registration, but held that point was not before it on appeal. The foregoing facts are undisputed in the record. There are certain other matters of fact which are in dispute.

It is alleged in the bill of complaint:

"That the sale of hairpins by the defendant, as hereinafter set out, under the designation 'Hump Hairpin,' both in the State of Illinois and elsewhere in the United States, and the offering for sale said hairpins under said designation, have deceived the trade and the public in said belief that the said hairpins so sold and offered for sale were manufactured by complainant, and possessed the qualities and characteristics for which complainant's goods and complainant have become known, as aforesaid, and the continuance thereof

is likely so to deceive the trade and the purchasing public."

Defendant, although stoutly maintaining it is wholly immaterial in view of the law applicable to the case, insists, nevertheless, that there is an entire absence of evidence tending to show that any purchaser has ever been misled into thinking that its, defendant's, hairpins were made by complainant as alleged. The parties offered evidence in support of their respective contentions on this point. Many witnesses for complainant testified to facts, showing that individual purchasers of hairpins quite generally regarded the "Hump" hairpin of defendant as the product of complainant, and in many instances it was made to appear that retailers who would not be so easily deceived had given orders for defendant's hairpins under the same impression. Sometimes these orders from prospective purchasers were sent to the complainant, and these orders are in evidence. The evidence for defendant tending to show want of deception was, with only one exception, given by witnesses who did not deal with the retail trade, and with all of them was purely negative in character. We think a preponderance of the evidence establishes that many of defendant's hairpins were sold under circumstances which indicate a belief in the minds of the purchasers that the goods purchased were manufactured by complainant. Defendant says, however, that the use of the word "Hump" was not the moving cause of these purchases, but, on the contrary, these were brought about because of the peculiar construction and special merits of defendant's pins. It is not denied that complainant's name was well and favorably known in this line of trade for 27 years, and that a high reputation for its goods was established long prior to the time when defendant's hairpins were put upon the market. Complainant's name and the words "Hump" and "See that Hump" had been associated together in advertising, covering the whole country many years prior to

defendant's use of the same. It is a reasonable inference from these facts that sales were brought about by the belief of purchasers that complainant made the goods. If such was not its effect why did defendant as a later trader use and why does it now tenaciously maintain its supposed legal right to use these words?

We think it is established by a preponderance of the evidence that the words "Hump" and "See that Hump" which were originally applied by complainant to its hooks and eyes, have by long association with complainant's name come to be considered in the notion trade as synonymous therewith, and in their secondary meaning have come to indicate goods of complainant's manufacture, and that the use of said words by defendant tends to deceive as alleged.

The second disputed material question of fact is whether Goldberg, defendant's predecessor in title, knew at the time he adopted the word "Hump" of its former use by complainant as applied to its products, and whether in adopting it, he did so with the intention of appropriating complainant's reputation and advertising.

So early as March 4, 1910, the defendant had been notified by complainant not to use the word "Hump" as a part of its name, stating, "Obviously it is unfair that this word should be used by you and your associates as a part of the name or title of the Hump Hairpin Company (which company you have stated is engaged in the manufacture and sale of hairpins), in view of the long and continued use of that word by my client and its predecessors in business in connection with and as a trade-mark for hooks and eyes manufactured and sold by them." To this letter defendant replied by its counsel, in effect, that it would comply with the request only when compelled by the courts to do so.

Goldberg testified in this case, and stated positively that he did not have knowledge of the use of these

DeLong H. and E. Co. v. Hump H. Mfg. Co., 216 Ill. App. 230.

words either in 1903 or 1904. It is contended that his evidence on this point is not credible. Certain established facts certainly indicate that his testimony is very improbable. That the essential mechanical principle of the DeLong hook and the Goldberg hairpin is the same is apparent from even a casual inspection. In the case of the hook, the bend or swelling of the central wire is called the "Hump." In the case of the hairpin the bend or swelling of the central wire is also called the "Hump." The name was applied to the hook in 1891. The same name was applied to the hairpin in 1903, twelve years thereafter.

The name was new and novel when first used by complainant in 1891. It had become almost universally known in the notion trade prior to its adoption by Goldberg in 1903. During, at least, a part of the intervening years, Goldberg was in the collor-button business, presumably familiar with novelties in collar buttons. It is improbable that he would during that time remain entirely ignorant of such a widely advertised novelty in hooks and eyes. In all the advertising of complainant where the DeLong hook appeared, the bend or hump of the hook had been called to the attention of the public by the words "See that Hump," with dotted lines extending from the phrase to the head of the hook.

Goldberg in 1906 and 1907 was president of a company dealing in roofing material. That company in connection with its advertising of its business adopted the phrase, "See that lap" in a design similar to that used by complainant in advertising the hook. When complainant began to manufacture hairpins in 1894 it used in connection with its advertising thereof, the phrase "It is in the twist." When at a later time Goldberg began to advertise his hairpin, he adopted in connection therewith the phrase "It locks the locks." It is quite impossible for us to think that all these things came to pass without design. When pressed on his examination, Goldberg said his patent attorney

gave the name "Hump" to his hairpin at the time when an application for a patent thereon was made. The testimony of this attorney was not taken, nor is any reason given for the failure to produce it. We are therefore left without explanation of how this thought of his mind came into being. It is highly improbable that the solicitor would have been in ignorance under all the circumstances of complainant's invention and trade-marks.

We are satisfied, from a consideration of all the testimony, that the fact of defendant's and its predecessor's knowledge of complainant's use of these terms at the time it began to use the same is established by a preponderance of the evidence, and this, although the court, erroneously as we think, refused to allow Goldberg to be cross-examined as to the similarity of the mechanical principle in complainant's hook and defendant's hairpin.

If knowledge is conceded, as we have found it must be, then we think there can be only one explanation of defendant's reason for appropriating the use of these words and that would be to appropriate to itself the benefits of complainant's reputation and advertising.

It therefore becomes necessary to consider the law applicable to these facts. The bill is brought for unfair competition, and the gist of such a case is the selling or disposing of his own goods by one trader as those of another and to the damage of the latter. Such a suit is clearly distinguishable from a suit for an infringement of a trade-mark. If this were such a suit for infringement it would not lie, because complainant has never registered nor used these names in the trade, as applied to the product known as hairpins. But the law of unfair competition rests on a broader basis, continually widening, so as to reach every unfair method by which one trader seeks to purloin the trade, good-will or reputation of another trader.

The defendant contends that the decision of the Court of Appeals for the District of Columbia, which overruled complainant's opposition to defendant's trade-mark, is decisive of the issues here, and that by reason thereof the defense of *res adjudicata* is applicable. While this would be true as to similar proceedings before a commissioner of patents or on appeal from him (*Blumenthal v. Bigbee,* 33 App. Cas. D. C. 209), it is not true as to a suit for unfair competition. It was held in *Frasch v. Moore,* 211 U. S. 1, that judgments in appeals from the commissioner of patents to the District Court of Columbia were interlocutory and not final, and hence not reviewable by the United States Supreme Court under the Federal Statutes, vol. 9, p. 777, and in *E. C. Atkins & Co. v. Moore,* 212 U. S. 285, it was held that the same rule was applicable to appeals taken from the commissioner under the Trade-Mark Act. The proceedings there were, therefore, not judicial in their nature, and did not finally adjudicate any of the rights of complainant as claimed in its bill.

The defendant next contends that as it has a valid and exclusive trade-mark in the word "Hump" as applied to hairpins, which the complainant has not, it cannot be guilty of unfair competition by its rightful use of a valid and exclusive trade-mark which belongs to it. This is not the law as we understand the decided cases. Trade-mark rights are not necessarily involved in cases of unfair competition. Indeed, it has been questioned whether there is any property right in trade-marks. But, however this may be, if the conduct of a defendant is such as to probably lead the public to believe that the goods of the defendant are those of complainant to complainant's injury, this is unfair competition, irrespective of the registration of trade-marks by either party. *Dyment v. Lewis,* 144 Iowa 138, 123 N. W. 244; *Bates Mfg. Co. v. Bates Numbering Machine Co.,* 172 Fed. 895.

The defendant, however, contends that as the patent upon complainant's hook and eye has expired, not only is the exclusive right to manufacture the article gone, but the name used to designate the patented article as well as the right to manufacture have passed to the public, and it says: "If appellant cannot prevent the use by others of the word 'Hump' or the words, 'See that hump' as applied to hooks and eyes made by others, it follows *a priori* that it cannot prevent defendant from using that word as applied to hairpins, and especially as the complainant never had a trademark thereon, as applied to hairpins." In support of this contention we are cited to *Singer Mfg. Co. v. June Mfg. Co.*, 163 U. S. 169; *Warren Featherbone Co. v. American Featherbone Co.*, 141 Fed. 513; *DeLong Hook & Eye Co. v. American Pin Co.*, 200 Fed. 66.

We do not think the cases cited sustain the doctrine contended for.

If the name under which the patented article was sold had become a generic one, as in the *Featherbone Co.* case cited, the rule contended for would apply, although, even then, in order to prevent unfair competition, a court of equity would require the later trader to adopt affirmative measures to prevent the public from being deceived as to the origin of the goods thereby and a complainant injured. *Singer Mfg. Co. v. Loog*, L. R. 8 App. Cas. 15.

The main point in this case is, we think, found in defendant's further contention that there is not and cannot be in the very nature of things any competition between complainant and defendant as to defendant's distinctive hairpins, because complainant never made or sold these hairpins and would have no right to do so. Therefore it is argued, though it be admitted that the use of these words by defendant in the sale of its hairpins would tend to induce the belief in the minds of a purchaser that they were made by complainant and not by the defendant, nevertheless, complainant cannot maintain its bill, since there cannot be unfair

competition where there is no competition, and where, even if it be conceded that there is competition, there can, in the very nature of things, be no injury to the complainant.  On this point the defendant relies upon the case of *Borden Ice Cream Co. v. Borden's Condensed Milk Co.*, 201 Fed. 510.  That case was decided by the U. S. Circuit Court of Appeals, Seventh Circuit, November 14, 1912, on appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.  The complainant in that case was incorporated in the State of New Jersey, May 31, 1899, for the purpose among others of purchasing and selling fresh milk and all products of milk.  The word "Borden" in its corporate name was taken from the name of Gail Borden, who founded the business in the year 1857.  It developed a large business in the State of Illinois and the City of Chicago and in disposing of its product used some 32 brands, each one of which either contained the name of Borden or was used in connection with the name "Borden's Condensed Milk Company."  On most of these brands, trade-marks had been registered.  The defendant incorporated under the name of Borden's Ice Cream Company, May 25, 1911, and by its charter was authorized "to manufacture and sell ice cream, ices and similar products," which products, however, were not manufactured or dealt in by the complainant.  The name was adopted over the protest of the complainant.  An injunction granted by the District Court was dissolved by the Court of Appeals, the court expressing the opinion that while it had been said that the universal test question in such cases was whether the public was likely to be deceived as to the maker or seller of the goods, this was not the fundamental question; that such deception would naturally tend to injure the proprietor of a business by diverting his customers and depriving him of sales which he, otherwise, might have made, and this, rather than the protection of the public against imposition was the sound and true basis for the

private remedy; that while it was morally wrong for a person to proclaim or intimate that his goods were manufactured by some other, this would not give rise to a private right of action, unless the property rights of that concern were interfered with. The court said:

"In the case now under our consideration, the old company (the appellee) never has manufactured what is known as commercial ice cream. The new company (the appellant) was incorporated for the sole purpose of manufacturing and putting on the market such an article * * *. There being no competition between appellants and appellee, we are confronted with the proposition that the appellee, in order to succeed on this appeal, has and can enforce a proprietory right to the name 'Borden', in any kind of business, to the exclusion of all the world."

This proposition the court refused to hold, citing *George v. Smith,* 52 Fed. 830. In the case of *Aunt Jemima Mills Co. v. Rigney & Co.,* 234 Fed. 804, this same doctrine was approved by the District Court of the United States in an opinion filed July 26, 1916, where the complainant, a Missouri corporation, engaged in the manufacture and sale of flour and which had adopted the name of Aunt Jemima's together with a fanciful picture of a colored woman as its trademark, endeavored to restrain the defendant, a New York corporation, engaged in the manufacture of syrups, rock candy, etc., from using a similar name and picture applied to pancake syrup. The court, upon the theory that pancake flour and syrup were not goods having the same descriptive properties, and that there would be no competition between them, and therefore no injury to the complainant, held complainant was not entitled to relief. The court said:

"It is apparent that there can be no direct competition in trade between flour and syrup, for their descriptive qualities are dissimilar. Although the question whether articles belong to competitive classes is a question of fact rather than of law, the reports are replete with the illustrations of the principle."

DeLong H. and E. Co. v. Hump H. Mfg. Co., 216 Ill. App. 230.

Citing with many other cases *Borden Ice Cream Co. v. Borden's Condensed Milk Co., supra.* But the Court of Appeals for the Second Circuit in an opinion filed December 11, 1917, reversed the judgment, saying:

"To use precisely the same mark as the defendants have done is, in our opinion, evidence of intention to make something out of it, either to get the benefit of complainant's reputation or of its advertisement or to forestall the extension of its trade. There is no other conceivable reason why they should have appropriated this precise mark.    *    *    *"

And with reference to the argument that there could be no unfair competition because the goods were not in competition with each other, the court said:

"*    *    *    But we think that goods, though different, may be so related as to fall within the mischief which equity should prevent.    *    *    *    It will enable them to get the benefit of the complainant's reputation and advertisement. These, we think, are property rights which should be protected in equity.    *    *    *    This is a wrong which equity will enjoin without reference to the character of the article, or to the question of competition or of prior occupation of the market in any particular territory. No one has the right to apply another's name to his own goods." *Aunt Jemima Mills Co. v. Rigney & Co.,* 247 Fed. 407.

The court cites as authorities *Florence Mfg. Co. v. J. C. Dowd & Co.,* 178 Fed. 73; *British-American Tobacco Co. v. British-American Cigar Stores Co.,* 211 Fed. 933; *Eastman Co. v. Kodak Cycle Co.,* 15 Reports Patent Cases 105; *Dunlop Pneumatic Tyre Co. v. Dunlop Lubricant Co.,* 16 Reports Patent Cases 12; *Valentine Meat Juice Co. v. Valentine Extract Co.,* 17 Reports Patent Cases 673; *Dunlop Pneumatic Tyre Co. v. Dunlop-Truffault Cycle & Tube Mfg. Co.,* 12 Times Law Reports 434; *Premier Cycle Co. v. Premier Tube Co.,* 12 Times Law Reports 481.

It would therefore appear that two courts of equal dignity have announced views which are diametrically opposed as to the law applicable to the case before us.

Our own Supreme Court has not, so far as we are informed, had the question before it. We think the tendency of the later decisions is to sustain the contentions of the complainant. While it may be true as a general proposition that where there is no competition there cannot be unfair competition, we are inclined to think the decision in the *Borden* case, *supra,* takes a narrow view as to the fact of the existence of competition. One who has adopted an arbitrary trade name and applied the same to a particular line of goods, it would seem, on principle, ought to have the right of protection in the use of that name to any extent which might be necessary to protect the reputation of his goods, and we think that there would be injury such as a court of equity would give a remedy for in the case of a subsequent trader who attempted to make use of that name as applied to any one of the species of the general kind of goods manufactured and sold by the first trader.

In the present case it is not strictly true that there is no competition between complainant and defendant. Complainant is a general dealer in notions, and in particular, in addition to hooks and eyes, deals in hairpins. The defendant also deals in hairpins, and while the hairpins are a different kind from those manufactured and sold by the complainant, these are nevertheless directly in competition. A sale of "Hump" hairpins, in the very nature of things, has a tendency to lessen the probability of the sale by complainant of the conventional hairpin in which it deals.

We cannot see an innocent motive for the defendant's actions. The facts indicate with a clearness which cannot be misunderstood, that it was and is the intention of the defendant to appropriate to its own use a portion of the good-will of complainant, in the obtaining of which, complainant has expended hundreds and thousands of dollars.

This would seem to be a case where the application

of the maxim that equity will not allow a wrong without a remedy is peculiarly appropriate.

The decree of the Circuit Court will be reversed and the cause remanded with directions to enter a decree in conformity with the views expressed in this opinion.

*Reversed and remanded with directions.*